2018 UT App 214

## THE UTAH COURT OF APPEALS

PETE C. HACKFORD,
Petitioner,

*v.*

UTAH STATE RETIREMENT BOARD,
Respondent.

Opinion
No. 20161052-CA
Filed November 16, 2018

Original Proceeding in this Court

Thomas J. Burns and John D. Walch, Attorneys
for Petitioner

David B. Hansen and Erin G. Christensen, Attorneys
for Respondent

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

TOOMEY, Judge:

¶1      Pete C. Hackford seeks review of a decision of the Utah State Retirement Board (the Board) that his retirement benefits from two periods of public employment must be calculated separately and that his original retirement benefits remained subject to a statutory early age reduction. We decline to disturb the Board's decision.

¶2      Hackford worked for the Utah Labor Commission in the Division of Boiler, Elevator, and Mine Safety (the Division) for nearly twenty years before seeking early retirement at age fifty. Upon employment, Hackford became a member of the Utah Retirement Systems' (the URS) Tier 1 Noncontributory Retirement System, which allowed him to acquire retirement

benefits without personally contributing to the retirement system. As an eligible veteran, Hackford elected to purchase a credit for his nearly six years of military service to be applied toward his years of service credit with the Division. This meant that in April 2011, when Hackford entered early retirement, he had accrued about twenty-five years of service credit that applied toward his retirement benefits.

¶3     When Hackford applied for retirement, he signed a "Notice of Post-Retirement Employment Restrictions," indicating that he understood that "[his] monthly benefit will be cancelled if [he] return[ed] to employment with a participating employer within one year of [his] retirement date." He also signed a statement acknowledging that he "read and underst[ood] the retirement options . . . , stipulations about alteration, addition, or cancellation of retirement, and other limitations" in accordance with the statutes governing the URS and the Board. *See* Utah Code Ann. § 49-11-607(1) (LexisNexis 2015). Because Hackford was fifty years old and retired with less than thirty years of service, his retirement allowance was subject to a statutory early age reduction. *See id.* § 49-13-402(2)(b) (Supp. 2018).

¶4     Hackford retired on May 1, 2011, and began receiving his monthly retirement allowance. But the Division reemployed him in his previous position the next month, on June 13, 2011. A retirement counselor for the URS informed Hackford that, upon reemployment, his retirement benefit would be cancelled and he would be reinstated in the retirement system. And when he retired a second time, his original retirement benefit calculation would resume and the additional years of post-retirement service credit would be calculated as an additional retirement benefit. Hackford told the retirement counselor that he understood how his retirement would be calculated in the future. In August 2011, the URS received a Post-Retirement Employment Form signed by Hackford, notifying it that Hackford was reemployed with the Division. Beginning July 1, 2011, the URS cancelled Hackford's retirement allowance and

reinstated him to active member status in the retirement system. To date, Hackford is still employed with the Division.

¶5     In the fall of 2014, Hackford contacted the URS to request an estimate of his retirement benefit with projected retirement dates of either January 1, 2015, or May 1, 2016. The estimates provided that his original retirement allowance would resume, subject to the early age reduction, and that an additional allowance based upon the number of years of post-retirement reemployment service would be calculated separately.

¶6     Hackford requested to remove the early age reduction from his 2011 retirement allowance, which the URS denied. It explained that, "at the time [Hackford] retired in May of 2011, [he] discussed [his] retirement with a counselor, [was] informed of the statutory reduction in [his] benefit due to early retirement and the applicable return to work provisions, and [he] decided to retire anyway." In addition, Hackford was informed at the time of his reemployment that his additional service credits would be calculated separately as additional benefits and "the benefit that was canceled [would] also be resumed." (Quotation simplified.) Based on his reemployment following the original retirement, the URS determined that, under the Utah Code, he was "not entitled to have the original benefit recalculated by removing the age reduction" upon his second retirement.

¶7     Hackford appealed the denial to the Board by filing a Request for Board Action, arguing that the URS "misapplied" the relevant statutory provisions and "improperly reduce[d] [his] accrued benefit under [his retirement plan]." Hackford and the URS filed cross-motions for summary judgment with the Board after first filing stipulated findings of fact. In Hackford's motion for summary judgment, he argued that the early age reduction was improper because he "worked for the [Division] continuously from 1991 to the present, with the exception of a 45-day period in mid-2011." The URS opposed Hackford's motion, stating that Hackford "fail[ed] to disclose in any way that the missing '45-day period' was the result of his retirement

and that during this period he received a monthly defined benefit of retirement allowance as a qualified retiree under [the] Utah Code." And in its own motion for summary judgment, the URS argued that, pursuant to the Utah Code, Hackford's "2011 retirement allowance [had] vested" and that his "retirement, including the early age reduction[,] is irrevocable and cannot now be altered."

¶8 The Board heard arguments on the motions and ultimately determined that the URS correctly calculated Hackford's retirement benefits. It concluded that, pursuant to Utah Code section 49-11-1204,[1] Hackford's "new total [retirement] allowance" was "the sum of two amounts":

> 1) the original allowance from his retirement in 2011 that was being paid at the time of cancellation [and reemployment], which would be resumed [upon his second retirement]; and 2) an additional allowance calculated based on the formula in effect at the date of the subsequent retirement for all service credit accrued between his retirement in 2011 and a subsequent retirement date.

*See* Utah Code Ann. § 49-11-1204(2), (5)(b) (LexisNexis Supp. 2018). The Board therefore granted summary judgment in favor of the URS.

¶9 Hackford seeks judicial review of the Board's decision, contending that it misinterpreted Utah Code section 49-11-1204

---

1. At the time of the appeal before the Board the relevant statutory provisions of the Utah Code were re-codified, but no substantive changes were made. *Compare* Utah Code Ann. § 49-11-505 (LexisNexis 2015), *with id.* § 49-11-1204 (Supp. 2018). Both parties agree that the result of this dispute would be the same under either version of the Utah Code. We therefore refer to the most recent versions of the Utah Code.

and thus erred by subjecting his retirement benefits to the "early age retirement reduction."[2] The Board's application or interpretation of a statute is a question of law that we review for correctness. *McLeod v. Retirement Board*, 2011 UT App 190, ¶ 9, 257 P.3d 1090.

¶10 When interpreting statutes, "we look first to the statute's plain language to determine its meaning." *Id.* ¶ 12 (quotation simplified). "To determine the meaning of the plain language, we examine the statute in harmony with other statutes in the same chapter and related chapters." *Id.* (quotation simplified). And we will liberally construe the provisions of the Utah State Retirement and Insurance Benefit Act "to provide maximum benefits and protections consistent with sound fiduciary and actuarial principles." *Id.* (quotation simplified); *see also* Utah Code Ann. § 49-11-103(2) (LexisNexis Supp. 2018).

¶11 Hackford contends the Board improperly determined that Utah Code section 49-11-1204(5)(b) applied to him, arguing that subsection (5)(b) could apply to him only if subsections (4)(a), (4)(b), and (3)(a) applied to him. We disagree.

¶12 When a retiree becomes "reemploy[ed] with a participating employer . . . within one year of the retiree's retirement date," the URS "shall cancel the retirement allowance of [that] retiree." Utah Code Ann. § 49-11-1204(2) (LexisNexis

---

2. To the extent Hackford argues that the early age reduction will apply to his second retirement benefit calculation, we do not reach that argument. Because Hackford is still employed by the Division, the calculation of his second retirement allowance will be "based on the formula in effect at the date of the subsequent retirement for all service credit accrued between the first and subsequent retirement dates." *See* Utah Code Ann. § 49-11-1204(2), (5)(b) (LexisNexis Supp. 2018); *see also id.* § 49-13-402(2) (providing the formula for retirement allowances based on age and years of service at the time of retirement).

Supp. 2018). But when a retiree becomes reemployed more than one year after the retiree's retirement date, the retiree "may elect to" either "(a) cancel the retiree's retirement allowance and instead earn additional service credit" or "(b) continue to receive the retiree's retirement allowance, forfeit earning additional service credit, and forfeit any retirement-related contribution from the participating employer that reemployed the retiree." *Id.* § 49-11-1204(3).

¶13    If the "retiree's retirement allowance is cancelled," either under subsection (2) or subsection (3)(a), "and the retiree is eligible for retirement coverage in a reemployed position, the office shall reinstate the retiree to active member status on the first day of the month following the date of the employee's eligible reemployment." *Id.* § 49-11-1204(4)(a). And if that retiree retires "two or more years after the date of reinstatement to active membership, the [URS] shall":

> (i) resume the allowance that was being paid at the time of cancellation; and

> (ii) calculate an additional allowance for the retiree based on the formula in effect at the date of the subsequent retirement for all service credit accrued between the first and subsequent retirement dates.

*Id.* § 49-11-1204(5)(b); *see also id.* § 49-11-607(1) (2015) (providing that "[a]fter the retirement date, which shall be set by a member in the member's application for retirement, no alteration, addition, or cancellation of a benefit may be made except as provided" by law).

¶14    Hackford's argument that subsection (5)(b) cannot apply to him because subsection (3)(a) does not apply to him is irrelevant. To begin with, while satisfaction of subsection (4)(a) is a predicate to reaching subsection (5)(b), the same cannot be said about subsection (3)(a). First, subsection (5)(b) expressly states that subsection (4)(a) must have been satisfied, but neither

subsection (4)(a) nor subsection (5)(b) expressly requires subsection (3)(a) to be satisfied. Satisfaction of either subsection (2) or subsection (3)(a) will suffice to trigger subsection (4)(a) because subsection (4)(a) requires that the retiree's retirement allowance is cancelled and the retiree, based on eligibility, is reinstated as an active member of the URS. *See id.* § 49-11-1204(2)–(4)(a). Second, subsection (2) and subsection (3) are mutually exclusive. A reemployed retiree cannot become reemployed both within one year of the retiree's original retirement date, *see id.* § 49-11-1204(2) (Supp. 2018), and also become reemployed more than one year after the original retirement, *see id.* § 49-11-1204(3).

¶15 Here, Hackford retired in May 2011 and received his retirement allowance for May and June 2011. In mid-June 2011, the Division reemployed him, and the URS reinstated him to active membership status in the retirement system and cancelled his retirement allowance effective July 1, 2011. *See id.* § 49-11-1204(2), (4)(a). Because Hackford became reemployed within one year of his retirement, subsection (2) applied and the URS followed the mandates of subsections (2) and (4)(a). Then, in 2014, Hackford requested estimates of his retirement benefits for "projected" retirement dates of January 1, 2015, and May 1, 2016. Hackford therefore projected to retire a second time "two or more years after the date of [his] reinstatement to active membership," triggering subsection (5)(b). *Id.* § 49-11-1204(5)(b). As a result, and as the statute requires, his retirement "allowance that was being paid at the time of cancellation"—in other words, his original retirement benefit—would resume on either of those projected dates and "an additional allowance . . . for all service credit accrued between the first and subsequent retirement dates" would be calculated "based on the formula in effect at the date of the subsequent retirement." *Id.*

¶16 It appears Hackford argues in the alternative that only subsection (2) of Utah Code section 49-11-1204 applies to him and therefore his original retirement was cancelled altogether upon reemployment, allowing for a recalculation of his

retirement in its entirety rather than as two separate periods of employment. We agree with the Board that if this was the legislature's intent in enacting this provision, the rest of the statute remains silent as to "what happens next to a retiree like Hackford whose benefit is involuntarily cancelled due to reemployment within one year of the retirement date." This would mean that the "benefit is cancelled, and no statutory provision exists to reinstate it." Because Hackford retired in 2011 and was reemployed, *see* Utah Code Ann. § 49-11-1202(4)(a) (LexisNexis Supp. 2018) (defining a "retiree"), he became subject to the reemployment rules and restrictions found in Utah Code sections 49-11-1201 through 49-11-1208.

¶17   Interpreting the statute as Hackford suggests would produce an absurd result. Instead, we interpret the statute to comply with the legislative intent that the Utah State Retirement and Insurance Benefit Act "be liberally construed to provide maximum benefits and protections consistent with sounds fiduciary and actuarial principles." *McLeod v. Retirement Board*, 2011 UT App 190, ¶ 12, 257 P.3d 1090 (quotation simplified); *see also* Utah Code Ann. § 49-11-103(2) (LexisNexis Supp. 2018) ("This [Act] shall be liberally construed to provide maximum benefits and protections consistent with sound fiduciary and actuarial principles.").

¶18   The Board therefore did not misinterpret or erroneously apply the statute. Because Hackford officially retired at age fifty with only twenty-five years of service credit, those retirement benefits will remain the same and subject to the early age reduction no matter when he chooses to retire a second time. *See* Utah Code Ann. § 49-11-1204(5)(b)(i); *id.* § 49-11-607(1). We therefore decline to disturb the Board's decision.

———————